Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José C. Abrams Rivera<br><br>    Peticionario<br><br><br>        v.<br><br>Estado Libre Asociado de Puerto Rico;<br>Departamento de Transportación y<br>Obras Públicas, José Miguel Izquierdo<br>Encarnación, Secretario del<br>Departamento de Transportación y<br>Obras Públicas en su carácter Oficial<br>y Personal, Juan e. Díaz Bellard,<br>Director Ejecutivo del Departamento<br>de Transportación y Obras Públicas en<br>su Carácter Oficial y Personal<br><br>Recurridos | Certiorari<br><br>2010 TSPR 68<br><br>178 DPR _____ |

Número del Caso: CC-2008-1103


Fecha: 5 de mayo de 2010


Tribunal de Apelaciones:

                Región Judicial de San Juan, Panel IV

Juez Ponente:        Hon. Carlos J. López Feliciano


Abogados de la Parte Peticionaria:

        Lcdo. Eliezer Aldarondo Ortiz
        Lcdo. Simone Cataldi Malpica
        Lcdo. Eliezer A. Aldarondo
        Lcdo. Carlos Santiago Tavarez

Oficina de la Procuradora General:

        Lcda. María C. Umpierre Marchand
        Procuradora General Auxiliar

Materia: Daños y Perjuicios


Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las decisio  nes del Tribunal. Su distribución electrónica se hace como   un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José C. Abrams Rivera<br><br>     Peticionario<br><br><br>       v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas, José Miguel Izquierdo Encarnación, Secretario del Departamento de Transportación y Obras Públicas en su carácter Oficial y Personal; Juan E. Díaz Bellard, Director Ejecutivo del Departamento de Transportación y Obras Públicas, en su carácter Oficial y Personal<br><br>     Recurridos | CC-2008-1103 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 5 de mayo de 2010.

Acude ante nos el peticionario, Sr. Juan C. Abrams Rivera, y solicita la revocación de una sentencia emitida por el Tribunal de Apelaciones. En dicha sentencia, el foro apelativo intermedio revocó una decisión del Tribunal de Primera Instancia tras acoger el recurso como uno de *certiorari*. El peticionario señala como errores de la sentencia recurrida que el recurso de "apelación" presentado por el Estado fue acogido como *certiorari* fuera de término y que no existían controversias de hechos que impidieran dictar sentencia sumaria. Resolvemos que el recurso apropiado para la revisión de

la determinación del foro primario era la apelación y que procedía dictar sentencia de forma sumaria.

Este caso nos permite aclarar la norma aplicable para adjudicar una moción de sentencia sumaria en el contexto de una reclamación de discrimen político y las diferentes etapas probatorias de la acción con sus respectivos requisitos. Además, nos permite precisar lo que constituye una sentencia parcial, revisable mediante el recurso de apelación.

I

El 4 de junio de 2001, el peticionario instó una demanda en la que solicitó sentencia declaratoria y reclamó al Estado una indemnización por daños y perjuicios.

En la demanda se adujo que los codemandados Ing. José M. Izquierdo Encarnación e Ing. Juan E. Díaz Belliard, despidieron por razones políticas al peticionario, quien fungía como ingeniero en el Departamento de Transportación y Obras Públicas (D.T.O.P.). Este último alegó que su puesto no requería afiliación política afín a la de la autoridad nominadora. Esta demanda surgió a raíz del despido del peticionario bajo el supuesto de que su puesto como Director Regional del D.T.O.P. era de confianza. La carta de despido entregada al peticionario el 19 de enero de 2001 indicaba que el despido se debía a que su puesto era de confianza,

por lo que era de libre selección y remoción. Este despido se dio como parte del cambio de administración de gobierno, al asumir la gobernación la Hon. Sila M. Calderón Serra.

En su contestación a la demanda, el Estado levantó como defensa que el puesto del peticionario era de confianza, por lo que era de libre selección y remoción. El 30 de diciembre de 2002, el peticionario solicitó que se dictara sentencia sumaria parcial. Dicha solicitud se presentó con una declaración jurada y varios documentos.

Estos documentos pretendían establecer: (1) que el peticionario era afiliado al Partido Nuevo Progresista; (2) la descripción de su puesto; (3) su desempeño eficiente; y (4) que su sustituto había sido candidato a alcalde por el Partido Popular Democrático en el Municipio de Cidra.

Además, se presentó una resolución emitida por el Tribunal de Primera Instancia el 6 de marzo de 1996. En ese caso, el demandante era el Ing. Juan E. Díaz Belliard. El ingeniero Díaz Belliard había sido removido de su puesto como Director Regional III el 15 de enero de 1993. Este despido se fundamentó en que el puesto de Director Regional III que ocupaba entonces el señor Díaz Belliard, al igual que el que ocupa en este caso el peticionario, era uno de confianza, por lo que había

libre selección y remoción. Apéndice del recurso, págs. 68-74.

Por estos hechos, el señor Díaz Belliard radicó una demanda y el Tribunal de Primera Instancia resolvió a su favor tras concluir que el puesto de Director Regional III no requería afiliación política con la autoridad nominadora. Ante esto, el foro primario ordenó su reinstalación al puesto y la compensación de los haberes dejados de percibir. Resolución de 6 de marzo de 1996, Civil Núm. 93-0275(907). De esta resolución recurrió en *certiorari* el Estado y el Tribunal de Apelaciones desestimó el recurso por no cumplir con las disposiciones reglamentarias.

Ahora, en el caso que nos ocupa, el ingeniero Díaz Belliard es uno de los codemandados-recurridos, en su carácter personal y como Director Ejecutivo del D.T.O.P.

En su oposición a la solicitud de sentencia sumaria, el Estado sostuvo que el puesto del peticionario era uno de confianza y que sus funciones requerían la formulación e implementación de política pública. Además, el Estado solicitó sentencia sumaria a su favor.

El Tribunal de Primera Instancia señaló y celebró una vista evidenciaria para dilucidar las solicitudes de sentencia sumaria presentadas. Esta vista se efectuó el 4 de febrero y el 19 de agosto de 2004. En su "Resolución y Orden de Señalamiento" el foro primario informó que la

parte demandada debía presentar prueba testifical para explicar la razón

> por la cual aparece en manuscrito y al margen bajo el encasillado donde indica: `No llene este espacio´, en el Documento de Descripción de Puesto del demandante la nota número 1 que lee: `Asesorar al Secretario, Director Ejecutivo de Obras Públicas y a la Secretaria Auxiliar de Administración sobre el proceso de desarrollo y formulación de la política pública del Departamento e implantar la misma a nivel regional una vez aprobada".

Apéndice del recurso, pág. 128.

Además, el foro primario requirió prueba para explicar por qué no aparece en esa hoja el tiempo porcentual dedicado a esa tarea de asesoramiento, cuando las demás tareas no relacionadas a la formulación e implementación de la política pública suman el cien por ciento (100%) sin contar la tarea añadida a mano. Id. Otro de los asuntos que el foro primario quería revisar en la vista evidenciaria eran las alteraciones en manuscrito de los números escritos a maquinilla de las distintas tareas. Id. Por último, el Tribunal de Primera Instancia quería auscultar la razón por la cual la tarea añadida en manuscrito no se encontraba en las descripciones de los demás puestos de Director Regional adscritos a otras regiones. Id.

El Tribunal de Primera Instancia escuchó y admitió el testimonio de la Sra. Carmen Berríos Torres y del peticionario. La señora Berríos Torres fue la persona que hizo la anotación en manuscrito en la descripción del

puesto del peticionario. La prueba documental admitida consistió en: (1) el expediente personal del peticionario; (2) el expediente del puesto de Director Regional; (3) la especificación del puesto de Director Regional; (4) la especificación del mismo puesto de 1 de abril de 1995; y (5) la descripción del mismo puesto en otras regiones.

El 5 de octubre de 2004, el foro primario emitió una determinación titulada "Sentencia Sumaria Parcial". Apéndice del recurso, pág. 131. En la misma, el foro primario hizo constar las siguientes determinaciones de hechos: (1) la descripción mecanografiada del puesto del peticionario Abrams Rivera era similar a las de los otros seis Directores Regionales del D.T.O.P.; (2) como parte de un proceso para implantar un Plan de Clasificación y Retribución, el peticionario describió su puesto sin la tarea de formulación e implementación de política pública; (3) esta descripción fue certificada por el supervisor inmediato del peticionario y por el Director de Recursos Humanos del D.T.O.P.; (4) estas funciones del peticionario quedaron inalteradas bajo el puesto de Director Regional II; (5) en la descripción del puesto del peticionario, la señora Berríos Torres añadió a manuscrito "[a]sesorar al Secretario, Director Ejecutivo de Obras Públicas y a la Secretaría Auxiliar de Administración sobre el proceso de desarrollo y

formulación de la política pública del Departamento e implantar la misma a nivel regional una vez aprobada" (Apéndice, pág. 7); (6) la anotación se hizo sin indagar si el peticionario realizaba dicha función y tampoco fue aprobada por éste o por su supervisor; (7) la señora Berríos Torres hizo la anotación porque entendía que era una función del puesto pero nunca se le informó al peticionario; (8) el peticionario nunca brindó la asesoría descrita a manuscrito y no se reunía con el Secretario ni con el Director Ejecutivo del D.T.O.P.; (9) ninguna de las descripciones de los puestos de Director Regional para las otras regiones tenía dicha anotación en manuscrito o mecanografiada; (10) un memorando emitido el 24 de octubre de 2001 por el Director de Recursos Humanos del D.T.O.P. certifica que el puesto de Director Regional II no es un puesto que requiera afiliación política pero que el puesto es de libre selección y remoción; (11) el demandado Juan Díaz Belliard conocía la afiliación política del peticionario; (12) el Estado no alega tan siquiera que las ejecutorias del peticionario han sido deficientes y sus evaluaciones reflejan que era un funcionario muy competente; y (13) el peticionario fue sustituido en su puesto por el Ing. Daniel Santos Benard quien es miembro activo del Partido Popular Democrático.

En su determinación, el foro primario concluyó que el puesto que ocupó el peticionario Abrams Rivera no

requería la afiliación política con la autoridad nominadora y que el peticionario Abrams Rivera logró establecer un caso *prima facie* de discrimen político que no fue rebatido por el Estado. Según el Tribunal de Primera Instancia, el Estado falló en demostrar una razón justificada para el despido o que el requisito de afiliación política era un requisito apropiado del puesto.

En su "Sentencia Sumaria Parcial" el Tribunal de Primera Instancia determinó que el peticionario Abrams Rivera debe ser restituido en su puesto, que debe compensársele por los haberes dejados de percibir y dejó "pendiente exclusivamente la reclamación de daños y perjuicios". Sentencia del Tribunal de Primera Instancia, pág. 29. Esta decisión se dictó al amparo de la Regla 43.5 de Procedimiento Civil (Sentencias sobre reclamaciones o partes múltiples), 32 L.P.R.A. Ap. III, y se dispuso que no existía razón para posponer el dictamen hasta la solución final del pleito. Esta decisión se notificó como sentencia y se apercibió a las partes de su derecho de recurrir en "apelación". Apéndice del recurso, pág. 130. El Estado solicitó reconsideración de la decisión. El foro primario, después de acoger la moción de reconsideración, denegó la misma el 7 de noviembre de 2007 y notificó la denegación el 15 de noviembre de 2007.

El Tribunal de Apelaciones acogió la "apelación" como *certiorari* y justificó que el recurso fuera presentado después de transcurrir el término de cumplimiento estricto de 30 días. La justa causa fue que la "sentencia" y su notificación apercibieron a las partes que el recurso apropiado para su revisión era la apelación. El recurso ante el Tribunal de Apelaciones se presentó el 15 de enero de 2008. Esto es, que se recurrió al foro apelativo intermedio a los 60 días desde la notificación de la decisión final del Tribunal de Primera Instancia.[1]

El foro apelativo intermedio determinó que la decisión emitida por el foro primario fue una resolución interlocutoria revisable por *certiorari*. Para esto, el Tribunal de Apelaciones citó jurisprudencia de este Tribunal y expresó que cuando en una reclamación de daños y perjuicios se bifurcan "los elementos de negligencia y daños, aunque se disponga del primer aspecto (la negligencia), no se resuelve de forma definitiva la cuestión litigiosa de la cual pueda apelarse". Sentencia del Tribunal de Apelaciones, págs. 3. (Apéndice pág. 704).

---

[1] El 14 de enero de 2008 fue día festivo en conmemoración del natalicio de Eugenio M. de Hostos. Según la Regla 68.1 de Procedimiento Civil, supra R.68.1, cuando el término vence un día feriado, su expiración se extiende hasta el próximo día laborable.

En su sentencia, el foro apelativo intermedio determinó que existían controversias de hechos que debían ser dilucidadas en juicio por lo que revocó la sentencia sumaria parcial del foro primario. El Tribunal de Apelaciones entendió que existía controversia sobre: (1) si la autoridad nominadora conocía de las preferencias político-partidistas del peticionario y (2) sobre si el puesto de Director Regional requería la afiliación política de la autoridad nominadora.

El peticionario Abrams Rivera, inconforme con esta determinación, acude ante nos y señala que el foro *a quo* erró al acoger el recurso de *certiorari* a pesar de que se presentó fuera de término. En la alternativa, señala que no había impedimento para dictar sentencia sumaria a su favor. El Estado sostiene en su alegato que el Tribunal de Apelaciones debió considerar el recurso de revisión como uno de apelación. Con el beneficio de la comparecencia de las partes, procedemos a resolver las controversias planteadas.

## II-A

La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, define el término ´sentencia`, como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Reiteradamente hemos resuelto que si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, se constituye en una sentencia final de la cual pueda interponerse recurso de apelación.

U.S. Fire Ins. Co. v. A.E.E., 151 D.P.R. 962, 967
(2000). (Citas omitidas).

La Regla 43.5 de Procedimiento Civil, supra,
permite a un foro de instancia dictar sentencia
final en cuanto a una o más reclamaciones o partes
sin tener que disponer sobre la totalidad del
pleito. 32 L.P.R.A. Ap. III, R. 43.5. A estos fines,
dicha regla dispone:

> **Regla 43.5. Sentencias sobre reclamaciones o partes múltiples**
>
> Cuando un pleito **comprenda más de una reclamación**, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra terceros o figuren en él partes múltiples el tribunal **podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito**, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.
>
> Cuando se haga la referida conclusión y orden expresa, **la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que ella respecta los términos dispuestos en las Reglas 47, 48 y 53.**
>
> En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las

reclamaciones y los derechos y obligaciones de las partes.

Regla 43.5 de Procedimiento Civil, supra. (Énfasis suplido).

En esencia, esta disposición quedó inalterada bajo las Reglas de Procedimiento Civil de 2009. Esta regla permite a un tribunal dictar sentencia sobre una o más reclamaciones cuando es innecesario tener que esperar a dictar sentencia sobre la totalidad de las reclamaciones. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil: Suplemento Acumulativo 2001-2005, San Juan, Publicaciones J.T.S., 2005, T. IV, pág. 228.

Existe más de una reclamación que adjudicar cuando de los hechos alegados se tiene derecho a dos o más remedios no contenidos el uno dentro del otro. R. Hernández Colón, Derecho Procesal Civil, 4ta ed., Puerto Rico, Lexis-Nexis, 2007, sec. 4107, pág. 328. Un reclamante "presenta múltiples reclamaciones cuando es posible más de un recobro que no son mutuamente excluyentes o cuando los hechos conceden a la parte más de un derecho legal o causa de pedir". Cuevas Segarra, op cit., T. II, pág. 704.

En First Fed. Savs. v. Nazario et als., 138 D.P.R. 872 (1995), tuvimos la oportunidad de expresarnos sobre lo que comprende tener reclamaciones múltiples para efectos de esta regla. En atención a decisiones en el ámbito federal sobre su regla análoga, acogimos la

"doctrina de los remedios múltiples" para determinar si existe más de una reclamación. Id., pág. 878. Véase además, Cuevas Segarra, op cit., T. II, pág. 704. Esta doctrina se puede sintetizar en lo siguiente:

> A single claimant presents multiple claims for relief under the Second Circuit's formulation when his possible recoveries are more than one in number *and not mutually exclusive* or, stated another way, when the facts give rise *to more than one legal right* or cause of action.

> 10 Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d Sec. 2657, pág. 67 (1983), citado en First Fed. Savs. v. Nazario *et als., supra,* pág. 879. (Citas omitidas).

Al aplicar esta doctrina, resolvimos que la acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta, la personal y la real, y que estas acciones son mutuamente excluyentes cuando es la misma persona el deudor y el propietario del bien hipotecado. Id. Por esto, no procede dictar sentencia parcial sobre una de las acciones. Id. En ese caso, el reclamante solo tiene derecho a un remedio y por ello, no existen reclamaciones múltiples, pues, el "demandante en este caso no tiene derecho a un remedio adicional e independiente de su derecho a obtener el pago de la deuda reclamada". Id., pág. 880. Ante esto, concluimos que no se trataba de una sentencia parcial al amparo de la Regla 43.5 de Procedimiento Civil pues no se había dispuesto de "forma completa de la única reclamación hecha en la demanda instada". Id., pág. 881.

Por esa razón, en García v. Padró, 165 D.P.R. 324 (2005), resolvimos que la determinación del foro primario constituye una resolución cuando adjudica solamente el elemento de negligencia y deja pendiente la adjudicación de la cuantía a indemnizarse por daños y perjuicios extracontractuales. Además, en U.S. Fire Ins. Co. v. A.E.E., supra, manifestamos que cuando se bifurcan en el pleito los elementos de negligencia y daños, la determinación de negligencia no resuelve finalmente la cuestión litigiosa de la cual pueda apelarse ya que "no puede ser final por no ser aún ejecutable". Id., pág. 968.

La diferencia del dictamen sobre si es resolución o sentencia es crucial a la hora de determinar el recurso disponible para solicitar su revisión. Una resolución, por su carácter interlocutorio, pone fin a un incidente dentro del proceso judicial y es revisable mediante el recurso de certiorari. García v. Padró, supra. Por otro lado, una sentencia le pone fin a una cuestión litigiosa de forma completa y por eso puede apelarse. Id.

Esta diferencia se torna más relevante cuando se trata de un pleito en el que el Estado es parte. De tratarse de una sentencia parcial, las partes tienen un término jurisdiccional de 60 días para presentar el recurso de apelación ante el Tribunal de Apelaciones y de tratarse de una resolución interlocutoria aplica el

término de cumplimiento estricto de 30 días. Reglas 53.1(c) y 53.1(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Esta diferencia sigue siendo vital bajo las Reglas de Procedimiento Civil de 2009.

B

Es preciso que determinemos, en primer lugar, si el Tribunal de Apelaciones debió desestimar el recurso de revisión porque fue presentado fuera del término de 30 días dispuesto por ley. Para ello, debemos determinar si la "sentencia sumaria parcial" del Tribunal de Primera Instancia es, en efecto, una sentencia parcial de la cual debe recurrirse en apelación o si, por el contrario, fue una resolución interlocutoria sujeta al recurso de *certiorari*.

En su demanda, el peticionario Abrams Rivera alegó que el peticionario fue discriminado por consideraciones de índole político-partidistas, en violación de sus derechos civiles. El señor Abrams Rivera alegó que la actuación ilegal de los demandados-recurridos le causaron "angustias mentales graves y daños y perjuicios", así como daños económicos. Id., pág. 15. La demanda se instó al amparo de la "Ley Federal de Derechos Civiles", de la "Ley de Derechos Civiles local" y al amparo de las Constituciones de los Estados Unidos y Puerto Rico. Id. Por estas alegaciones, el peticionario solicitó la reinstalación a su puesto, el resarcimiento de los

haberes dejados de percibir y, la indemnización por los daños y perjuicios causados, incluyendo angustias mentales.

En su solicitud de sentencia sumaria, el peticionario fundamentó su pedido en que el demandado no ha cuestionado los hechos que dan lugar a la presunción de discrimen. Ante esto, solicitó que se declarara ilegal el despido y que se ordenara su restitución. Así como el pago de los haberes dejados de percibir.

El dictamen del foro primario declaró con lugar la moción de sentencia sumaria parcial y ordenó la restitución del peticionario, así como el pago de los haberes dejados de percibir. Además, dejó "pendiente exclusivamente la reclamación de daños y perjuicios" y ordenó expresamente el registro y notificación de la sentencia, "toda vez que no existe razón para posponer este dictamen hasta la solución final de la acción incoada". Sentencia del Tribunal de Primera Instancia, págs. 28-29 (Apéndice págs. 158-159). De esta manera, el foro primario adjudicó la reclamación principal al amparo de las Constituciones de Puerto Rico y Estados Unidos.

Entendemos que la decisión emitida por el foro primario fue una sentencia parcial que es revisable mediante apelación. Los casos citados por el Tribunal de Apelaciones para decidir que se trataba de una resolución interlocutoria son claramente distinguibles. Tanto en

García v. Padró, supra, como en U.S. Fire Ins. Co. v. A.E.E., supra, se bifurcaron los procesos para determinar la negligencia y los daños en el contexto de una reclamación al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. En esos casos, no se habían resuelto las reclamaciones de daños y perjuicios de los demandantes de forma final, pues no se habían adjudicado los daños. Los demandantes en esos casos no tenían derecho a otro remedio salvo la indemnización provista por el Art. 1802 del Código Civil, supra.

En cambio, en este caso, el peticionario reclama diversos remedios al amparo de varias causas de acción. Lo resuelto por el foro primario adjudicó finalmente la reclamación de despido discriminatorio en violación de los derechos constitucionales del peticionario. Este remedio es adicional e independiente al que el peticionario pueda tener en una acción de daños y perjuicios. El remedio concedido procedería aún sin la existencia del Art. 1802 del Código Civil, supra. En el presente caso, no se bifurcaron los elementos de negligencia y daños pues lo resuelto no se fundamenta en una acción al amparo del Art. 1802 del Código Civil, supra.

El remedio concedido por el Tribunal de Primera Instancia ordena la restitución del peticionario y el pago de los haberes dejados de percibir. Esta decisión es

ejecutable y por lo tanto constituye una decisión final. Diferente es el caso de una reclamación extra contractual en la cual se adjudica la negligencia y se deja pendiente la determinación de la cuantía de daños. Bajo este supuesto, la determinación "no puede ser final por no ser ejecutable aún". U.S. Fire Ins. Co. v. A.E.E., supra, pág. 968. Véanse además, García v. Padró, supra; First Fed. Savs. v. Nazario et als., supra.

Por lo antes dicho, concluimos que el Estado acudió en tiempo al foro apelativo intermedio al radicar su apelación dentro del término jurisdiccional de 60 días provisto por la Regla 53 de Procedimiento Civil, supra. Corresponde evaluar entonces, si procedía la sentencia dictada.

### III-A

La Regla 36.2 de Procedimiento Civil permite dictar sentencia de forma sumaria sobre la totalidad o sobre cualquier parte de una reclamación. 32 L.P.R.A. Ap. III. Este mecanismo puede ser utilizado para resolver de forma final una controversia que sea separable de las otras reclamaciones. 32 L.P.R.A. Ap. III R. 36.3. Con este mecanismo procesal se facilita la solución justa, rápida y económica de los litigios civiles cuando éstos no presentan controversias genuinas de hechos materiales. Luan Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).

La sentencia sumaria es el mecanismo procesal disponible para resolver controversias que no requieren la celebración de un juicio. Ramos Pérez v. Univisión de P.R., Op. de 3 de febrero de 2010, 2010 T.S.P.R. 15, 2010 J.T.S. __, 178 D.P.R. ___ (2010); Quest Diagnostic v. Mun. San Juan, Op. de 14 de mayo de 2009, 2009 T.S.P.R. 77, 2009 J.T.S. 80, 175 D.P.R. __ (2009). Como es sabido, procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, surge que no existe controversia real y sustancial sobre algún hecho material y como cuestión de derecho debe dictarse sentencia a favor del proponente. 32 L.P.R.A. Ap. III R. 36.3. El proponente de la moción de sentencia sumaria debe establecer su derecho con claridad y demostrar que no existe controversia sustancial o real sobre algún hecho material. Ramos Pérez v. Univisión de P.R., supra. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como "esenciales y pertinentes...".

Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. Ramos Pérez v. Univisión de P.R., supra. Véase además, Cuevas Segarra, op cit., T. I, pág. 609. Cualquier duda no es suficiente para denegar una solicitud de sentencia sumaria, pues debe tratarse de una

duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Ramos v. Univisión de P.R., supra.

La parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no debe cruzarse de brazos. Es decir, viene obligada a contestar de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una controversia real y sustancial que debe dilucidarse en juicio. Ramos Pérez v. Univisión de P.R., supra. Su obligación procesal es proveer prueba detallada y suficiente para crear una controversia sustancial de hechos relevantes y esenciales. Id. Véase además, J. Moore, Moore's Federal Practice, 3rd ed., Ed. Mathew Bender, sec. 55.11[6][b], pág. 56-145. Para eso, la parte opositora "a tenor con la Regla 36.5, estará obligada a demostrar que tiene prueba para sustanciar sus alegaciones". Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983).

Al determinar si existen controversias de hechos que impiden disponer del caso sumariamente, el tribunal debe analizar los documentos que acompañan la moción, los documentos incluidos con la moción en oposición, y aquellos que obren en el expediente. El tribunal determinará si la parte que se opone a que se dicte sentencia sumaria controvirtió algún hecho material o si

hay alegaciones que no han sido refutadas de forma alguna. López v. Miranda, 166 D.P.R. 546, 562-563 (2005). La determinación del foro de primera instancia debe regirse por el principio de liberalidad a favor de aquella parte que se opone a que se disponga del pleito de forma sumaria. Ramos Pérez v. Univisión de P.R., supra. Ello persigue evitar que se le prive a un litigante de su día en corte cuando existen controversias de hechos sustanciales. Ibíd.

El hecho de que la solicitud de sentencia sumaria se presente en un caso que involucre una acción que requiera algún elemento subjetivo de intención, propósito mental o negligencia, o cuando el factor de credibilidad es esencial, no impide su concesión si no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión de P.R., supra. "[L]a Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular". García López v. Méndez García, 88 D.P.R. 363, 380 (1963). "La regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo". P.E. Ortiz Álvarez, Hacia el uso óptimo de la sentencia sumaria, Año 3, Núm. 2, Rev. Forum, pág. 9 (1987).

Anteriormente, hemos validado el uso del mecanismo de sentencia sumaria en casos de discrimen cuando resulta clara la inexistencia de controversia sobre algún hecho

material. Ramos Pérez v. Univisión de P.R., supra; López
v. Miranda, supra. Aunque el referido mecanismo procesal
debe usarse con mesura, si el tribunal queda "claramente
convencido de que tiene ante sí, de forma no
controvertida, todos los hechos materiales pertinentes y
de que, por lo tanto, una vista en los méritos resulta
innecesaria", procederá dictar sentencia sumariamente.
López v. Miranda, supra, pág. 565. Según resolvimos en
López v. Miranda, supra, en casos de discrimen sólo
procederá dictar sentencia sumariamente "cuando del
estudio de todos los documentos presentados surge que no
existe controversia alguna sobre hechos esenciales". Id.
Ahora bien, "cualquier duda no es suficiente para
derrotar una moción de sentencia sumaria" pues "tiene que
ser una duda que permita concluir que existe una
controversia real y sustancial sobre hechos relevantes y
pertinentes". Ramos Pérez v. Univisión, supra, pág. 5.
Debe tenerse presente que el referido vehículo procesal
persigue mantener un balance entre el derecho de un
litigante a tener su día en corte y el objetivo
fundamental de nuestro sistema procesal de lograr una
solución justa, rápida y económica de las controversias.
Ibíd.

En los casos que involucran etapas probatorias o
presunciones, como ocurre con las acciones de discrimen,
la adjudicación de una solicitud de sentencia sumaria

tiene que evaluarse según la etapa probatoria aplicable. "Para adjudicar la solicitud de sentencia sumaria se deben considerar los hechos no controvertidos a la luz de la carga procesal que tendrá [la parte] en el juicio". Ramos Pérez v. Univisión de P.R., supra, pág. 27. Solo así, el mecanismo de sentencia sumaria logrará su propósito cardinal de evitar un juicio innecesario.

B

Las sociedades modernas se han encargado de proscribir muchas "acciones individuales que van en detrimento del bienestar común y del progreso". Ramos Pérez v. Univisión de P.R., supra; Ramírez Ferrer v. Conagra Foods P.R., Op. de 14 de abril de 2009, 2009 T.S.P.R. 55, 2009 J.T.S. 58, 175 D.P.R. __ (2009). "[E]s la sociedad quien, de ordinario, establece los parámetros aceptados para discriminar. Las normas sociales establecen cuándo y sobre cuáles asuntos los juicios valorativos de los individuos son inaceptables, impartiéndole así atributos negativos a la discriminación". Alberty v. Bco. Gub. De Fomento, 149 D.P.R. 655, 661-662 (1999).

"Es función ineludible de este Tribunal el dar vigencia a las garantías constitucionales establecidas en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico para la protección de los derechos individuales" y esto incluye "la garantía

constitucional contra discrímenes por motivo de ideas políticas". Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1972). Véase, Sec. 1, Art. II de la Constitución de Puerto Rico. Igual protección provee la Constitución de los Estados Unidos. Branti v. Finkel, 445 U.S. 507 (1980).

En Báez Cancel v. Alcalde Mun. de Guaynabo, supra, se instó un recurso de *mandamus* contra el Municipio de Guaynabo para solicitar la renovación del nombramiento y el pago de los salarios dejados de percibir hasta la restitución debido a que la actuación de no renovarle los contratos a unos empleados municipales fue motivada por consideraciones de índole política-partidista. En aquella ocasión, resolvimos que la Constitución de Puerto Rico proscribe el discrimen por ideas políticas. En el contexto del empleo público, expresamos que dicha protección está disponible para empleados permanentes o irregulares. A igual conclusión hemos llegado en cuanto a empleados transitorios y de confianza. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117 (2001); Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

Más aun, en Ramos v. Srio. de Comercio, id., conforme a la doctrina establecida por el Tribunal Supremo de los Estados Unidos en Branti v. Finkel, supra, resolvimos que no se puede discriminar contra un empleado por razón de sus creencias políticas salvo que el

gobierno pueda demostrar un "interés superior de importancia vital que requiera que las creencias privadas de la persona coincidan con la autoridad nominadora". Ramos v. Srio. de Comercio, supra, pág. 516.

La "indagación última no es si la etiqueta de ´formulador de normas` o de ´de confianza` aplica a un puesto en particular, por el contrario, la cuestión es si la autoridad nominadora puede demostrar que la afiliación político-partidista es un requisito apropiado para el desempeño del cargo público". Id. Recae sobre la autoridad nominadora el peso de prueba de tal hecho. Id.

Por eso, en McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113 (1989), avalando la utilización del mecanismo de sentencia sumaria, expresamos que aunque los puestos de confianza son de libre selección y remoción, esto no priva de la protección contra el discrimen político. En ese caso afirmamos que "la autoridad nominadora no puede despedir válidamente a un empleado de confianza sólo por motivos políticos, o sea, por la sola razón de su afiliación política, a menos que pueda demostrarse que éste es un requisito apropiado para el desempeño eficiente de los deberes y responsabilidades del puesto". Id., pág. 139. "Se trata de una norma de naturaleza constitucional que tiene apoyo, en el caso de Estados Unidos, en la libertad de asociación protegida por la Primera Enmienda de la Constitución federal y en el caso

de Puerto Rico, en la Carta de Derechos..." como protección adicional. Id. (Citas omitidas). Véase además, Franco v. Municipio de Cidra, 113 D.P.R. 260, 264-265 (1982). Recae sobre la autoridad nominadora producir la prueba para establecer que la afiliación política es un requisito apropiado para el desempeño efectivo del puesto en cuestión. McCrillis v. Aut. Navieras de P.R., supra.

El demandante tiene dos vías para probar su caso de discrimen político: (1) probando el discrimen; o (2) valiéndose de la presunción a su favor al establecer un caso prima facie. Esta presunción está gobernada por las reglas de evidencia, que en una acción civil, impone a la parte contra la cual se establece la presunción, la carga de demostrar la inexistencia del hecho presumido. Id. Esta presunción de discrimen político se establece cuando se establecen los siguientes hechos: "(1) ausencia de un motivo racional que justifique el despido y (2) la sustitución del empleado por otro de diferente afiliación política que resulte afín con la de la autoridad nominadora". Id., págs. 140-141. El demandante tiene que aportar prueba para establecer estos hechos para que la presunción opere a su favor y el demandado venga obligado a ofrecer prueba conducente a "demostrar la no existencia de los hechos básicos y, en consecuencia, la del hecho presumido". Id. Sólo si el demandado puede cumplir con esta segunda etapa probatoria, en su modalidad de

ausencia de discrimen, es que el demandante viene obligado a presentar prueba de que su despido fue motivado por sus creencias políticas. Id.

La segunda vía que tiene el demandado para prevalecer en la acción en su contra es demostrando "que la posición que ocupaba el demandante está cubierta por una de las excepciones a la prohibición de despidos de empleados públicos por razones políticas". Id., págs. 142-143. Esto es, debe demostrar que para el cargo en cuestión, "la filiación política es un requisito adecuado para su desempeño efectivo". Id. De cumplirse con esta segunda etapa, en la modalidad de requisito apropiado, el dictamen favorecerá al demandado.

En Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990), avalamos la doctrina pautada en Báez Cancel v. Alcalde Mun. de Guaynabo, supra. Allí, reafirmamos la "fuerte presunción" de discrimen que surge cuando el demandante despedido establece que: (1) su despido fue "en ausencia de motivo racional" y (2) "la sustitución por otro empleado de diferente afiliación política que resulta afín con la de la autoridad nominadora". Rodríguez Cruz v. Padilla Ayala, supra, pág. 502. Además, establecimos un tercer requisito para ser acreedor de la presunción de discrimen, a saber, que el demandante "está identificado claramente con un partido político". Id. Véase, además, López v. Miranda, supra, 559-560.

De conformidad con lo anterior, en Orta v. Padilla Ayala, 131 D.P.R. 227 (1992), aplicamos la presunción de discrimen político a favor de unos empleados que demostraron que: (1) eran miembros de un partido-político no afín al de la autoridad nominadora; (2) se cesantearon con una causa que resultó ser falsa; y (3) se sustituyeron por empleados afín al partido político de la autoridad nominadora. Sin embargo, en Segarra v. Mun. de Peñuelas, 145 D.P.R. 770 (1998), validamos la norma aplicada anteriormente para establecer la presunción de discrimen político en los casos de despidos de empleados de confianza. Esta es, hay que demostrar que (1) no existen motivos racionales para el despido; y (2) que el empleado demandante fue sustituido por una persona perteneciente a un partido distinto al suyo y afín al de la autoridad nominadora.

Por último, en López v. Miranda, supra, desestimamos sumariamente una demanda de discrimen político en el empleo pues la parte demandada presentó declaraciones de los propios demandantes aceptando que no tenían afiliación clara a algún partido político "sino [que] meramente [eran] simpatizantes de dicho partido", y uno de ellos del propio partido al que pertenecía la autoridad nominadora. Id., pág. 552. Además, éstos declararon que ninguno de los funcionarios de la alta jerarquía o supervisores del Municipio conocían de su

afiliación política. Por último, los demandantes no pudieron establecer uno de los requisitos para establecer la presunción de discrimen, a saber, demostrar la acción perjudicial en su contra.

En ese caso, afirmamos que la normativa probatoria aplicable a despidos de empleados de confianza aplica a los empleados de carrera que han sido afectados con actos perjudiciales por parte de su patrono. Ahora bien, para establecer la presunción de discrimen los empleados de carrera no tienen que establecer el hecho de haber sido sustituidos por una persona que pertenece a un partido distinto y afín con el de la autoridad nominadora. Id., págs. 559 y 560.

IV

Según discutido anteriormente, la adjudicación de una solicitud de sentencia sumaria se tiene que evaluar según las etapas probatorias de la acción en cuestión. Ramos Pérez v. Univisión de P.R., supra. En una acción de discrimen político existen varias etapas probatorias que trasladan el peso de prueba de una parte a la otra.

Debemos ratificar la norma aplicable a este tipo de acción de forma clara. El demandante que alegue que el Estado ha tomado ilegalmente sus creencias político-partidistas para actuar en perjuicio de su empleo tiene dos vías probatorias para tramitar su acción. Éste puede presentar evidencia que por preponderancia demuestre que

fue discriminado por su afiliación política. También, puede valerse de la presunción a su favor.

Si el demandante opta por establecer un caso *prima facie* mediante la utilización de la presunción de discrimen, deberá aportar prueba que demuestre los hechos básicos. McCrillis v. Aut. Navieras de P.R., supra. Al establecer los hechos básicos se infiere que hubo discrimen por razones políticas y el peso de prueba recae sobre la parte demandada. Esto último, debe derrotar la presunción en su contra ya sea rebatiendo los hechos básicos o el hecho presumido. Id. En el caso de un empleado de carrera la presunción de discrimen se establece probando que: (1) no existen motivos racionales para su despido y (2) que tiene una clara identificación política. López v. Miranda, supra; Rodríguez Cruz v. Padilla Ayala, supra. En el caso de un empleado de confianza es necesario probar, además, un tercer requisito: (3) que ha sido sustituido por una persona que pertenece a una ideología o partido político distinto al suyo y afín al de la autoridad nominadora. Id.

El peticionario Abrams Rivera presentó prueba en la que estableció los siguientes hechos: Primero, no existían motivos racionales para despedirlo ya que fue acreedor de varios aumentos de salario por la calidad de sus servicios y de evaluaciones favorables.

Además, el peticionario Abrams Rivera tenía una clara identificación política. Mediante declaración jurada, el empleado demostró que es miembro del Partido Nuevo Progresista y que desempeñó las siguientes funciones en esa colectividad: Coordinador Regional para la Asociación de Empleados Públicos Progresistas en Guayama, Miembro de la Junta Central del partido, Coordinador Regional de Finanzas en el Distrito de Guayama, Organizador político de Lajas y Aguas Buenas, Director Electoral del Distrito Senatorial de Guayama, Presidente de la Junta Local para las primarias de San Juan y Jayuya, Presidente de la Junta de Distrito de Guayama para el Caucus del Partido Republicano Nacional, Delegado Presidencial en la reorganización de Dorado y San Juan, Supervisor de las Juntas de Inscripción Permanentes, Inspector y Coordinador Electoral en varios colegios y unidades, Presidente del Comité Timón para el Plebiscito de Status del 1993 y 1998 en Cayey y Guayama, Coordinador para el referéndum de 1994 y en las elecciones de 1996, primarias para candidato a Alcalde por el Municipio de Adjuntas, entre otras.

En tercer lugar, el peticionario Abrams Rivera probó que fue sustituido por una persona que pertenece a un partido distinto al suyo y afín con la autoridad nominadora. La persona que sustituyó al peticionario, el Sr. Daniel Santos Bernard, es miembro del Partido Popular

Democrático y fue candidato a alcalde por este partido en el Municipio de Cidra en las elecciones de 1992.

Según la evidencia presentada, el peticionario Abrams Rivera demostró tener prueba para establecer un caso *prima facie* de discrimen político. Esto es, en el juicio el Estado habría tenido el peso de la prueba para establecer la no existencia de los hechos que fundamentan la presunción o de la presunción en sí. McCrillis v. Aut. Navieras de P.R., supra. Por otro lado, el demandado puede optar por demostrar que la afiliación política con la autoridad nominadora es un requisito apropiado del puesto. Id. El Estado no demostró tener prueba sustancial o suficiente de ninguno de estos hechos.

En su oposición a la sentencia sumaria y en solicitud de sentencia sumaria a su favor, el Estado arguyó que el peticionario admitió que no tenía conocimiento personal de que el Secretario del D.T.O.P. conocía su afiliación política. Sin embargo, este hecho no es uno que el demandante tenga que probar si cuenta con la presunción de discrimen político a su favor. Precisamente, al establecer una presunción de discrimen se infiere que el despido estuvo motivado por consideraciones políticas.

En ninguna parte de su oposición el Estado presentó algún tipo de prueba que indicara que el Secretario del D.T.O.P. despidió al señor Abrams Rivera por alguna razón

ajena a la afiliación política del peticionario. Sin embargo, el Estado presentó la contestación a un interrogatorio en el que el peticionario afirmó que el Secretario del D.T.O.P. "[lo] clasificó como miembro del Partido Nuevo Progresista y [lo] destituyó". Apéndice del recurso, pág. 116. De igual forma, afirmó que el codemandado ingeniero Díaz Belliard conocía de sus preferencias políticas. Id., pág. 117.

Por otro lado, el Estado no demostró que la afiliación política afín con la autoridad nominadora era necesaria para ejercer eficientemente la función del puesto en cuestión. La "indagación última no es si la etiqueta de ´formulador de normas` o ´de confianza` aplica a un puesto en particular; por el contrario, la cuestión es si la autoridad nominadora puede demostrar que la afiliación político-partidista es un requisito apropiado para el desempeño del cargo público". Branti v. Finkel, supra, págs. 517-518, citado en Ramos v. Srio. de Comercio, supra, pág. 516. Id. Recae sobre la autoridad nominadora el peso de prueba de tal hecho. Id. Ante estos hechos, procedía conceder la solicitud de sentencia sumaria sin más.

El foro primario celebró una vista evidenciaria para dilucidar las inconsistencias y razones por las cuales las tareas de asesoramiento sobre la formulación e implementación de política pública se encontraban en

manuscrito en la descripción del puesto del peticionario. Tras esta vista, el juzgador de hechos concluyó que el peticionario nunca brindó la asesoría descrita como parte de su cargo. Cabe señalar que de los propios documentos ante la consideración del juzgador surgía que ninguno de los otros seis puestos de Directores Regionales requería esta función. En esta vista se determinó que la función de asesoría añadida en manuscrito fue añadida a la hoja de descripción del puesto del peticionario por personal del D.T.O.P. sin conocimiento alguno de que el peticionario, en efecto, realizaba estas gestiones.

La Regla 36.3 de Procedimiento Civil, supra, supone que no hay que celebrar una vista evidenciaria para adjudicar una moción de sentencia sumaria. La sentencia sumaria, si procede, se dicta a base de la evidencia documental en autos. En este caso, la vista celebrada por el Tribunal de Primera Instancia se limitó a dilucidar el valor probatorio que se le debía otorgar a unas anotaciones realizadas a manuscrito en el documento que describía los deberes del cargo de Director Regional. Es decir, el foro primario se circunscribió a dirimir un asunto relacionado sólo con la prueba documental que tenía ante sí para resolver el litigio por la vía sumaria. En ese sentido, la vista celebrada por el Tribunal de Primera Instancia no respondió a una duda sobre los hechos esenciales del caso, sino a un

cuestionamiento sobre la validez de uno de los documentos utilizados para establecer la ausencia de controversias de hechos. Luego de aclarar este asunto, el foro primario quedó convencido de que en las circunstancias del caso de marras procedía la adjudicación sumaria de la reclamación del peticionario porque a la luz de las respectivas mociones de sentencia sumaria presentadas por ambas partes, así como de los documentos que acompañaron a éstas, surge con claridad que el peticionario estableció un caso *prima facie* de discrimen político y que el Estado no puso en controversia ni refutó algún hecho material. Por consiguiente, esa vista no fue necesaria para dilucidar los hechos esenciales del caso. Así pues, procedía dictar sentencia de forma sumaria.

Recordemos que habiéndose establecido la presunción de discrimen político, era el Estado la parte que tenía el peso de la prueba. El foro primario no erró al conceder la sentencia sumaria pues el Estado en su oposición no presentó "evidencia sustancial de los hechos materiales que están en controversia" y descansó "en meras alegaciones". Ramos Pérez v. Univisión de P.R., supra; Flores v. Municipio de Caguas, supra, pág. 525. Ante esto, era fútil la celebración de un juicio.

El mecanismo de sentencia sumaria es el medio adecuado para limpiar la casa de frivolidades y descongestionar los calendarios judiciales. A.C.A.A. v.

Travelers Ins. Co., 104 D.P.R. 844 (1976). Procede dictar sentencia sumaria cuando de los documentos presentados surge que no existe controversia alguna de hechos esenciales. López v. Miranda, supra. Esta controversia debe ser real y sustancial, sobre hechos reales y pertinentes. Ramos Pérez v. Univisión, supra.

El Estado sostiene que el remedio no puede ser la reinstalación al puesto que ocupaba el peticionario, pues se trata de un puesto de confianza. Alegato del Estado, págs. 21 y 33. No le asiste la razón. La disposición constitucional que proscribe el discrimen político nos obliga a conceder un remedio efectivo. Este remedio ha sido avalado por esta Curia en casos similares en los que la acción de personal es motivada por consideraciones políticas de forma inconstitucional. Aponte Burgos v. Aponte Silva, supra; Rodríguez Cruz v. Padilla Ayala, supra; Ramos v. Srio. de Comercio, supra. Esto es, procede anular el despido ilegal de un empleado de confianza. Id. Además, procede la compensación de los haberes dejados de percibir. Id.

Como expresamos en Rodríguez Cruz v. Padilla Ayala, supra, en cuanto a los puestos de confianza:

> [S]i la autoridad nominadora no refuta la prueba sobre discrimen, ni presenta prueba que demuestre alguna otra razón válida para el despido, ni demuestra que la afiliación política es un requisito apropiado para el desempeño del cargo, no hay razón alguna para que dicho empleado, eficiente y competente, no

deba ser reinstalado al cargo del cual fue despedido y continúe desempeñando el mismo. Por otro lado, y a diferencia del caso de la acción por razón de despido injustificado que le concede al empleado de empresa privada la Ley Núm. 80 de 30 de mayo de 1976 --al amparo de la cual el remedio que, de ordinario, se concede lo es el pago de la 'mesada'-- aquí se trata de una conducta que viola un mandato expreso de nuestra Constitución, con el agravante de que es el Estado el violador, el cual se supone sea el primero en defender los derechos constitucionales de nuestra ciudadanía. Esto es, de no ordenarse la reposición del empleado público al cargo que ocupaba, a todos los efectos prácticos se estaría 'premiando' la acción inconstitucional de la autoridad nominadora al discriminar contra el empleado destituido por razones políticas y 'castigando' el empleado, capaz y competente, que ha sido víctima del impermisible discrimen político. La violación de un derecho constitucional por parte del Estado amerita y exige un remedio efectivo que vindique, elimine y señale el camino a seguirse en el futuro en relación con conducta contraria a lo establecido por nuestra ley fundamental.

...

Resolvemos, en consecuencia, que procede ordenarse la reinstalación del empleado de confianza al cargo del cual fue removido cuando dicha destitución ha tenido como base razones de índole político-partidista debiendo, además, compensarse a éste por los haberes que efectivamente dejó de percibir como resultado de la acción ilegal de que fue objeto.

Id., págs. 523-525. (Citas omitidas).

IV

Por los fundamentos antes expuestos, se revoca la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, y se reinstala la sentencia sumaria parcial del Tribunal de Primera Instancia, Sala de San

Juan. Se remite el caso a ese foro para que dilucide la reclamación de daños y perjuicios.

Se dictará Sentencia de conformidad.




                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| José C. Abrams Rivera | | |
|---|---|---|
| Peticionario | | |
| v. | CC-2008-1103 | |
| Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas, José Miguel Izquierdo Encarnación, Secretario del Departamento de Transportación y Obras Públicas en su carácter Oficial y Personal; Juan E. Díaz Bellard, Director Ejecutivo del Departamento de Transportación y Obras Públicas, en su carácter Oficial y Personal | | |
| Recurridos | | |

SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, y se reinstala la sentencia sumaria parcial del Tribunal de Primera Instancia, Sala de San Juan. Se remite el caso a ese foro para que dilucide la reclamación de daños y perjuicios.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no interviene.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo